*In re* GOTAUTAS ESTATE.

KUPOS *v.* RIMKUS.

1. WILLS—VALIDITY OF PARTICULAR PROVISION—ADMISSION TO PROBATE.

The question of whether a particular provision of a will was prohibited by statute by reason of being a bequest to a Communist, or subversive, organization may not be litigated until it is determined whether the will qualified for probate (Const 1908, art 2, § 22; CLS 1961, § 702.1a).

2. SAME—EXECUTION—MENTAL COMPETENCY—FRAUD—UNDUE INFLUENCE.

Finding of trial judge in will contest that there was no evidence that will was not executed according to law, that deceased lacked mental competency or capacity to make a will, or that the execution of the will had been induced by fraud or undue influence *held,* supported by record (CL 1948, § 702.5).

3. WORDS AND PHRASES—UNDUE INFLUENCE.

Undue influence in itself is a species of fraud.

Appeal from Berrien; Zick (Karl F.), J. Submitted June 4, 1964. (Calendar No. 24, Docket No. 50,559.) Decided September 2, 1964.

In the matter of the estate of Anton Gotautas, deceased, petition for probate of will was made by

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills § 747.
[2] 57 Am Jur, Wills §§ 133 *et seq.,* 435 *et seq.,* 902.
[3] 23 Am Jur, Fraud and Deceit § 12.
Fraud is distinguished from undue influence as ground for contesting will. 92 ALR 790.

Constance Rimkus. Objections filed by Walter K. Kupos, Bruno Kupos and Josepha Drovetz. Directed verdict and judgment for plaintiff-proponent. Defendant-contestants appeal. Affirmed.

*Dominic Farina,* for plaintiff.

*Philip A. Brown,* for defendants.

O'HARA, J. We review here a narrow issue. It was narrowed to its essence by the able trial judge in his remarks to the jury when he directed the verdict. We will quote liberally therefrom in our disposition hereof.

The case, a will contest, was duly certified to the circuit court for trial before a jury. The factual background is as follows:

Deceased Anton Gotautas died testate on May 4, 1961. He was a Lithuanian, and proudly so, the record establishes. He immigrated to this country prior to World War II while Lithuania was still an independent sovereignty. His particular interest was Lithuanian operetta or, perhaps more accurately, the absence thereof. Through this interest and his own participation in choral groups he came to know the proponents of the will and its coexecutors, Peter and Constance Rimkus. Peter died and Constance remains as proponent.

The Rimkuses shared deceased's interest in Lithuanian culture and they often made trips to nearby Chicago to attend programs devoted thereto. The Rimkuses were also identified with the aims of an organization called the Lithuanian Fine Arts League. It is the contention of contestants that it is a Communist front. Deceased left his total estate to the organization. The objections to the admission of the will to probate includes the assertion that deceased's will is a nullity because the devise is to a

corporation so constituted as to use that devise or bequest for "subversion" as that term is defined in section 22, article 2 of the Constitution (1908). They urge that the devise offends against CLS 1961, § 702.1a (Stat Ann 1962 Rev § 27.3178[71a]), which prohibits such testamentary disposition.

The contestants are 2 nephews and a niece. The issues before the circuit court on certification were identical in part with those filed as objections to probate of the will in the probate court, whether:

(1) The purported will was executed in compliance with the statutory requirements.*

(2) The testator had testamentary capacity at the time of its execution.

(3) Its execution was fraudulently induced.

It should be apparent that even if the issues had not been so limited with precision by the pretrial memorandum (summary), the question of whether the Lithuanian Fine Arts League fell within the interdict of the statute could not be litigated until it was determined whether the will qualified for admission to probate.

As earlier noted, Judge Zick in the circuit, directed a verdict *on the issues before him.* He allowed contestants great latitude in introducing testimony as to whether the Lithuanian Fine Arts League was in fact subversive, but only, as he iterated and re-iterated, as that testimony bore on the issue of testamentary capacity. He allowed contestants the maximum opportunity to develop their theory that no one in his right mind would leave his estate to a subversive organization, and therefore that testator obviously lacked testamentary capacity.

We quote now from his remarks on the direction of the verdict:

---

* See CL 1948, § 702.5 (Stat Ann 1962 Rev § 27.3178[75]).— REPORTER.

"*The Court:* Members of the jury, in your absence the attorney for the proponent made a motion for a directed verdict in favor of the proponent—that means allowing the will—and let the record show the contestants have submitted all their proofs in this matter.

"Under our system of jurisprudence, members of the jury, you are the judges of the facts and the court is the judge of the law. There must be evidence upon which to base a verdict.

"As you know, this is a will contest case. The issues in the pretrial conference memorandum which was held August 9, 1962, are stated as follows (reading):

" 'The principal issues for determination are as follows:

" '1. That said purported will was not executed as required by law.

" '2. That at the time said instrument was purportedly executed by the deceased, the deceased lacked mental competency or capability to make a valid will.

" '3. That said instrument does not represent the will or desire of the said deceased, but was induced by fraud and undue influence practiced upon said deceased.'

"Those are the issues in this case, ladies and gentlemen of the jury.

"Now, as I told you, the court does not wish to invade the province of the jury; nor can the jury, under our system of jurisprudence, invade the province of the court. Therefore, the motion for a directed verdict will be granted, for the following reasons:

"1. There is no evidence whatever presented here to the court to the effect that the will was not executed as required by law.

"2. There was no evidence presented here whatsoever to the effect that the deceased lacked mental competency or capacity to make a valid will.

"3. There is no evidence that the execution of said will was induced by fraud and/or undue influence. Undue influence in itself is a species of fraud, but there is no evidence here before the court on which a jury could base a verdict against the proponents of this will.

"Another reason, if the jury will recall, there was testimony by 2 witnesses to the effect that this deceased person who executed this will would not have left his property to an organization that is tinted with Communism or a front for Communism. However, both of those witnesses testified that they had not discussed the matter with him. They had never discussed the will. They didn't know where he left his property. One said they didn't even know he had any property to leave. The point I am getting to, members of the jury, is that at the most the contestants have proved—and simply by statement, and not by clear and satisfactory proof—that this Lithuanian Fine Arts League associates with Communistic papers, and so forth, Communistic persons. There is some connection there. That is the most they have proved. They have not proved they are subversive, and I want to make it clear to the jury that it wouldn't matter to this court if they did, for this reason: There is no evidence to that effect, but assuming for the sake of the argument that the Lithuanian Fine Arts League, Inc., is a front for the Communist Party and is a subversive organization, nevertheless, this deceased had a right— perhaps he was a Communist—there is no evidence— he had a right to will his property in that manner.

"Furthermore, and I think the jury would be interested, if it is true, the only question before us is whether the will was proper, whether there was undue influence exercised, whether there was fraud, and whether he lacked mental capacity. There is no evidence here—and that is not an issue here, and I want everyone to understand that—there is a State statute in Michigan that provides to the effect that anyone that leaves his property to a subversive or-

ganization, that that bequest is illegal and void. Therefore, if these contestants can prove—not before this court; this court allowed this testimony in because it thought it would be connected up with influence and fraud, and so forth—therefore, if these contestants can prove before the Probate Court Judge, Julian Hughes, when this matter is sent back to him after the will has been allowed, if they can prove to the probate judge of Berrien county that this Lithuanian Fine Arts League, Inc., is a subversive organization, then this organization will not get that money. It will go to the heirs. Whether or not they can prove that, I don't know. That is not my business. The court feels here that there is simply no question—and I want to make this clear on a directed verdict—the court can only direct a verdict—when a court rules on a matter like this, he must find every fact in favor of the contestants; and I conclude all they have proved is there is some association between the Lithuanian Fine Arts League, Inc., and a Communist organization, which has nothing to do with this case at the moment. That is all they have proved. In other words, there is no question of fact for you, the jury, to decide. I could not send this case to the jury because you could not decide that the will was not executed as required by law. You could not decide the man lacked mental capacity. There is no evidence to support that finding. Further, you could not decide the execution of this will was induced by fraud or undue influence. There is simply no factual basis; and, of course, there is no use wasting your time and the court's time—I could even go a step farther —that in the event I did submit the case to the jury and the jury returned a verdict against the proponent, for the contestants—I don't see how the jury could and don't think they would, but if they did, I would have to set that verdict aside. *There is simply no issue of fact before the jury."* (Emphasis supplied.)

We have examined the record with care and we arrive at the same conclusion as did the trial judge— "there is simply no issue of fact before the jury." The verdict as directed is affirmed. Appellee may tax costs.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SOURIS, SMITH, and ADAMS, JJ., concurred.